NO. 07-04-0362-CV



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



DECEMBER 15, 2005



______________________________




JESSE BRYAN SMITH AND THE SALVATION ARMY, APPELLANTS



V.



OTIS M. SCOTT, APPELLEE




_________________________________



FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;



NO. 90,718-A; HONORABLE BRIAN POFF, JUDGE



_______________________________



Before REAVIS and CAMPBELL and HANCOCK, JJ.

MEMORANDUM OPINION

 Appellants, Jesse Bryan Smith and The Salvation Army, appeal a judgment following
a jury trial awarding appellee, Otis M. Scott, damages for personal injuries sustained in an
automobile accident. By two issues, Smith and The Salvation Army contend the trial court
erred because (1) there was no evidence, or factually insufficient evidence, to support the
award of $75,000 for future loss of earning capacity, and (2) there was no evidence, or
factually insufficient evidence, to support the award of $75,000 for past loss of earning
capacity. (1) We affirm.

 In September 2002, Scott was injured when his vehicle collided with a Salvation
Army truck driven by Smith. One day following the collision, Scott began experiencing pain
in his shoulder and decided to seek treatment. Following x-rays, pain medication was
prescribed and Scott was sent home. When the pain persisted, his family physician, Dr.
Don Frank, referred him to Dr. Howard Berg, an orthopedic surgeon. After reviewing Scott's
x-rays and MRIs, Dr. Berg diagnosed Scott's injury as a left shoulder rotator cuff tear. In
May 2003, Scott underwent surgery to repair his shoulder. 

 At the time of the collision, Scott, although age 78 continued working as a self-employed builder and general contractor. Primarily, he was engaged in remodeling jobs, 
but he occasionally constructed new houses. Scott testified that from the date of his injury
until May 2003, when he underwent surgery to repair his rotator cuff, he was physically
unable to work as he had prior to the collision, but he was able to work several "small jobs." 
However, he testified that due to the limited mobility in his shoulder, his participation on
those jobs was limited to supervising a crew of workers. Following his surgery in May 2003,
Scott was unable to do any work for four months. Scott testified that he experienced a
significant decrease in earnings as a result of his inability to use his shoulder in his
employment. 

 At the conclusion of the evidence, among other awards, the jury returned a verdict
awarding Scott a total of $200,000 in damages, which included $75,000 for lost earning
capacity in the past and $75,000 for lost earning capacity in the future. Smith and The
Salvation Army subsequently moved for judgment notwithstanding the verdict contending
there was no evidence, or the evidence was legally insufficient to sustain the award of
damages for loss of past and future earning capacity. The court overruled the motion and
rendered judgment on the verdict. Smith and The Salvation Army then filed a motion for
new trial claiming the evidence was factually insufficient to support the award. The motion
was overruled by operation of law, and Smith and The Salvation Army filed a notice of
appeal.

 When an appellant challenges both the legal and factual sufficiency of the evidence,
the appellate court should first review the legal sufficiency challenge. Glover v. Texas Gen.
Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). When an appellant attacks the legal
sufficiency of an adverse finding on which he did not have the burden of proof, we must
review the entire record for any probative evidence which, when viewed in its most favorable
light, supports the adverse finding. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778,
782 (Tex. 2001); Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 276
(Tex.App.-Amarillo 1988, writ denied). If there is more than a scintilla of evidence to
support the verdict, we uphold the judgment. Lenz v. Lenz, 79 S.W.3d 10, 19 (Tex. 2002). 
We must disregard all evidence and inferences to the contrary. Id.

 When an appellant challenges the factual sufficiency of an adverse finding where he
did not have the burden of proof, we must examine the entire record to determine if there
is some probative evidence to support the finding; and if there is, we must determine 
whether the evidence which supports the finding is so weak as to be clearly wrong and
manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). When considering
factual sufficiency challenges to a jury's verdict, courts of appeals must consider and weigh
all of the evidence, not just evidence which supports the verdict. See Maritime Overseas
Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998); Raw Hide Oil & Gas, 766 S.W.2d at 276.

 Addressing the arguments in logical order, we begin by reviewing Smith and The
Salvation Army's second issue. By this issue, they contend there was no evidence, or
factually insufficient evidence to support the award of $75,000 for past loss of earning
capacity. We disagree.

 Loss of earning capacity is the plaintiff's diminished capacity to earn a living. Koko
Motel, Inc. v. Mayo, 91 S.W.3d 41, 51 (Tex.App.-Amarillo 2002, pet. denied). It entails the
consideration of what plaintiff's capacity to earn a livelihood actually was and assesses the
extent to which it was impaired. Id. Loss of past earning capacity is the plaintiff's
diminished capacity to earn a living during the period between the injury and the date of trial. 
See Strauss v. Continental Airlines, Inc., 67 S.W.3d 428, 435 (Tex.App.-Houston [1st Dist.]
2002, no pet.). In order to support such a claim, the plaintiff must introduce evidence from
which a jury may reasonably measure in monetary terms his earning capacity prior to injury. 
Id. If the plaintiff's earning capacity is not totally destroyed, but only impaired, the extent of
his loss can best be shown by comparing his actual earnings before and after his injury. 
McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712 (1943). See also Strauss, 67 S.W.3d
at 436. In determining whether evidence is sufficient, there is no general rule, and each
case must be judged on its particular facts. McIver, 169 S.W.2d at 712.

 In the present case, Scott's claim for loss of past earning capacity is based on a
seventeen-month period between his injury, September 24, 2002, and his trial, February 17,
2004. Based on his business records, Scott testified his net income in 2002 was $65,405. 
He divided this figure by the number of weeks he worked in 2002 to determine that he
earned approximately $1,525 per week in 2002. He also divided his net income in the year
following his injury, $9,624, by the number of weeks he was able to work in 2003 and
determined that he earned approximately $401 per week in 2003. Based on this evidence,
a jury could have reasonably concluded that Scott's income was diminished by at least
$101,701 in the seventeen-month period between the date of his injury and the date of his
trial. (2) Although this figure represents Scott's potential lost earnings due to his injury, it is
also indicative of his diminished earning capacity. See id.

 Smith and The Salvation Army contend this evidence by itself was insufficient to
support a jury determination of loss of past earning capacity because Scott could not name
one customer he turned down because of his injuries and could not describe how much
more money he could have made but for his injuries. However, due to the unforeseeable
nature of Scott's business, it is not clear whether this type of information was readily
ascertainable at trial. More important, the only evidence Scott was required to present was
evidence from which a jury could determine earning capacity prior to the injury in monetary
terms. Strauss, 67 S.W.3d at 435. We find the comparison of Scott's weekly earnings from
2002 to 2003 was probative evidence in this regard and allowed the jury to reasonably
conclude Scott's earning capacity was diminished in the amount of $75,000 over the
seventeen-month period before trial. Furthermore, we do not find this evidence to be so
weak as to be clearly wrong and manifestly unjust. Their second issue is overruled.

 By their first issue, Smith and The Salvation Army contend there was no evidence,
or factually insufficient evidence to support the award of $75,000 for future loss of earning
capacity. We disagree. 

 Loss of future earning capacity is the plaintiff's diminished capacity to earn a living
after the trial. Plainview Motels, Inc. v. Reynolds, 127 S.W.3d 21, 35 (Tex.App.-Tyler 2003,
pet. denied). To support an award for damages for loss of future earning capacity, the
plaintiff must introduce evidence sufficient to allow the jury to reasonably measure earning
capacity in monetary terms. Id. at 35-36. Because the amount of money a plaintiff might
earn in the future is always uncertain, the jury has considerable discretion in determining
this amount. McIver, 169 S.W.2d at 712.

 Smith and The Salvation Army maintain the evidence presented in the present case
was insufficient because Scott said he would rely on the good judgment of the jury to
determine any compensation for loss of future earning capacity. Scott, on the other hand,
directs us to the evidence of his weekly earning capability. We find this evidence was
sufficient to allow the jury to reasonably conclude Scott's future earning capacity was
diminished in the amount of $75,000. Furthermore, Dr. Berg testified by video deposition
regarding the extent of Scott's injury and the permanent restrictions on the affected
shoulder. There was also testimony by Scott, his wife, and an acquaintance regarding how
the injury affected Scott's stamina, ability, and desire to perform as he had prior to the
collision. We find all of this testimony to be more than a scintilla of evidence regarding his
diminished capacity to earn a living in the future and not so weak as to be clearly wrong and
unjust. Smith and The Salvation Army's first issue is overruled.

 Accordingly, the trial court's judgment is affirmed.


 Don H. Reavis

 Justice

 

 
1. The Salvation Army does not challenge the jury awards of $21,101.03 for medical
care in the past, $15,000 for physical pain, mental anguish, and physical impairment in the
past and $13,898.97 for physical pain, mental anguish, and physical impairment in the
future. 
2. This amount can be reached by multiplying the amount Scott was capable of earning
per week prior to his injury, $1,525, by the number of weeks from his injury until the time of
his trial, approximately 73. This results of earnings of $111,325. Subtract the $9,624 Scott
actually earned in 2003, and he is left with a difference in earnings of $101,701 over the
seventeen-month period.



der the "new law," the Legislature created the right of a subclaimant for
the first time, and, under Texas Labor Code section 409.009 . . . . Any
person or entity has an independent right as a subclaimant to seek
reimbursement for any services for the workers' compensation insurance
carrier, and if they wish to pursue that right they can.


 4. The four factors, which must all four be met, under the Bocanegra test
were not all shown to have [been] met as a matter of law. Without all four
factors met, an election of remedies has not been made. This right cannot
be taken away by attempting to create an election of remedies, which such
under the new law is not inconsistent or allowing an injured employee a
double recovery.


Because grounds 1 and 3 are not implicated here, we will direct our attention to ground 1
as it relates to issue one and ground 4 as it relates to issue two.

 In support of its first issue, citing section 406.035, the Commission argues because
the Act creates express statutory rights, it abrogates the common law election of remedies
defense. That section provides:

 § 406.035 Waiver of Compensation Prohibited

 Except as provided by this subtitle, an agreement by an employee to waive
the employee's right to compensation is void.


The Commission has not cited any case authority for its position and the issue presents a
question of first impression as applied to these unique facts.

 Although section 408.001 provides that recovery under the Act "is the exclusive
remedy of an employee covered by workers' compensation insurance coverage," before
that provision applies, the injured person must have been an "employee" as defined by the
Act. An "employer" is a person "who makes a contract of hire" and an employee is a person
who works for an employer, excluding independent contractors. Tex. Lab. Code Ann. §§
401.011(18) & 401.012(b) (Vernon Supp. 2003). 

 The Commission's argument incorrectly assumes that the term "waiver" as used in
the statute is synonymous with the doctrine of election of remedies. "Waiver" is commonly
defined "as the intentional release, relinquishment, or surrender of a known right." See
Fisher v. First Nat. Bank of Memphis, 584 S.W.2d 515, 519 (Tex.Civ.App.--Amarillo 1979,
no writ), citing Ford v. Culbertson, 158 Tex. 124, 308 S.W.2d 855, 865 (1958). Election of
remedies is broadly defined as the act of choosing between two or more inconsistent but
coexistent modes of procedure and relief allowed by law on the same state of facts. 
Custom Leasing, Inc. v. Texas Bank & Tr. Co. of Dallas, 491 S.W.2d 869, 871 (Tex. 1973). 
Where, as here, the Legislature does not define a term, its ordinary meaning will be
applied. Hopkins v. Spring Independent School Dist., 736 S.W.2d 617, 619 (Tex. 1987). 
As is apparent from considering the definitions of "waiver" and "election of remedies,"
section 406.035 does not abrogate the common law defense of election of remedies. 
Moreover, because a "right" must exist before it can be waived, the uncertainty of Everett's
status as an employee precluded a waiver of compensation benefits by executing the
settlement agreement. Accordingly, taken in the context of this record, the Act does not
abrogate the common law election of remedies defense. Issue one is overruled.

 By its second issue, the Commission argues that where an employee settles a claim
against an employer and thereafter pursues a timely filed worker's compensation claim, the
settlement does not rise to the level of an election. Based on this record, we disagree. The
Commission acknowledges that the insurance carrier disputed Everett's claim as an
employee. Further, the Commission did not seek to avoid the settlement agreement on the
grounds of fraud, accident, mistake, or otherwise, or challenge the good faith of the
insurance carrier in disputing Everett's status as an employee. In deciding this issue, it is
important to consider the chronology of the following events in light of paragraph 5 of the
settlement agreement: 

 December 21, 1995 Injury;

 March 22, 1996 Everett files common law personal injury action;

 April 25, 1996 Insurance carrier disputes status as an
employee;

 October 16, 1996 Everett filed compensation claim; 

 February 18, 1997 Compromise settlement agreement signed and
$37,500 paid to Everett. Also, $2,217.65 paid in
attorney's fees and court costs;

 November 4, 1997 Everett decides to pursue his compensation
claim; record is silent as to why Everett delayed
in pursuing his claim for compensation. 

 

Summarized here, by paragraph 5 of the settlement agreement, Everett also agreed that
he would not bring, commence, institute, nor maintain any claim against The Finished
Touch, its insurers, or others who might be in privity with them. Also, in paragraph 6,
Everett agreed to indemnify and hold The Finished Touch, et al. harmless from claims
based in contract, tort, or statute. Although the Insurance Fund did not contend that the
agreement constituted a "release" of claims, it did contend that it operated as an election
of remedies. 

 In Custom Leasing, 491 S.W.2d at 871, the Court held:

 An election of remedies is the act of choosing between two or more
inconsistent but coexistent modes of procedure and relief allowed by law on
the same state of facts. When a party thus chooses to exercise one of them
he abandons his right to exercise the other remedy and is precluded from
resorting to it.


The Commission contends that the four elements of the doctrine as announced in
Bocanegra v. Aetna Life Ins. Co., 605 S.W.2d 848, 851 (Tex. 1980), to-wit: 

 when (1) one successfully exercises an informed choice (2) between two or
more remedies, rights or states of facts (3) which are so inconsistent as to (4)
constitute manifest injustice 


were not established by the summary judgment evidence. We disagree for the following
reasons.

 Exercise of informed choice. In Bocanegra, the Court held that the worker did not
make an informed choice because she was a layman and the medical terms and issues 
were beyond her general understanding. Here, however, Everett made an informed choice
because the terms used in the compromise and settlement agreement are commonly used 
and Everett acknowledged that he signed the agreement "after consultation with his
attorneys." 

 Two or more remedies or rights. Because Everett's status as a employee was
challenged at the time of the agreement, the exclusive remedy provision in section 408.001
and the "opt out" provisions in section 406.034 were not controlling. Therefore, Everett
could have diligently prosecuted his worker's compensation claim or could, as he did, elect
to accept $37,500 in accordance with the compromise and settlement agreement.

 Inconsistent. Unlike a common law action for damages, workers' compensation
benefits are not dependent on a finding of fault. Further, where an injured person is an
employee as defined by the Act, the prosecution of a common law negligence action
against an employer is prohibited under section 408.001. 

 Constitute manifest injustice. Everett signed a contract after consulting with his
attorney by which, among other things, he agreed not to assert any claims arising under
common law, in equity, or statute. Notwithstanding his agreement not to pursue a claim
after he was paid $37,500, Everett pursued his compensation claim. Moreover, a party is
generally not entitled to a double recovery which exists when a party obtains more than one
recovery for the same injury. Waite Hill Services, Inc. v. World Class Metal, 959 S.W.2d
182, 184 (Tex. 1998). 

 We have not overlooked the Commission's argument regarding section 410.253;
however, because courts generally presume that a statute shall operate prospectively only,
Subaru of America v. David McDavid Nissan, 84 S.W.3d 212, 219 (Tex. 2002), and
because that statute was not effective until September 1, 1997, it does not apply to a
settlement agreement made in February of 1997. Moreover, the issue was not expressly
presented to the trial court by written answer or response. McConnell, 858 S.W.2d at 341. 
Issue two is overruled.

 Accordingly, the judgment of the trial court is affirmed.

 Don H. Reavis

 Justice
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by
assignment.
2. Tex. R. App. P. 47.2(a)
.
3. Tex. Lab. Code Ann. § 401.001 (Vernon Supp. 1998 & 2003) (hereafter the Act).
4. The Commission does not present an issue contending that a genuine issue of
material fact exists and precludes summary judgment. Tex. R. Civ. P. 166a(c).
5. Although represented by counsel in the trial court, Everett did not file a notice of
appeal.
6. A motion for summary judgment should "state the specific grounds" for the motion.
Tex. R. Civ. P. 166a (c).